Kegan A. Brown (NJ Bar No. 015482007)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel.: (212) 906-1200
Email: kegan.brown@lw.com

*Counsel for Proposed Intervenor-Defendant*
*Orsted North America Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAVE LONG BEACH ISLAND and ROBERT STERN, | Case No.: 3:23-cv-01886-ZNQ-JBD |
| Plaintiffs, | Judge Zahid N. Quraishi<br>Magistrate Judge J. Brendan Day |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S MOTION TO INTERVENE AND TO DEFER FILING ANSWER** |
| U.S. DEPARTMENT OF COMMERCE; GINA RAIMONDO, in her official capacity as Secretary of Commerce; NATIONAL MARINE FISHERIES SERVICE; and JANET COIT, in her official capacity as Director, National Marine Fisheries Service, | |
| Defendants. | **Motion Return Day: May 15, 2023** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................4

        A.      Ørsted's Involvement in Multi-Year Federal and State Consultation and
                Approval Processes.................................................................................5

III.    ARGUMENT .........................................................................................................8

        A.      Ørsted Is Entitled to Intervention as of Right .........................................8

                1.      Ørsted's Motion Is Timely.............................................................9

                2.      Ørsted Has Multiple Significantly Protectable and Substantial
                        Interests in the ITAs that Are the Subject of This Action..........10

                3.      Without Intervention, Disposition of the Action Would Impair and
                        Impede Ørsted's Ability to Protect Its Interests.........................13

                4.      Existing Parties Will Not Adequately Represent Ørsted's Interests..........15

        B.      In the Alternative, the Court Should Grant Permissive Intervention....................17

        C.      Ørsted Should Be Permitted to File Its Answer by the Same Deadline as
                Federal Defendants ...............................................................................18

IV.     CONCLUSION....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
   309 F.R.D. 191 (D.N.J. 2015) .................................................................................9

*Allco Renewable Energy Ltd. v. Haaland*,
   No. 1:22-cv-10921-IT (D. Mass. June 13, 2022), ECF No. 121 .............................3

*Am. Farm Bureau Fed'n v. EPA*,
   278 F.R.D. 98 (M.D. Pa. 2011)....................................................................... *passim*

*Am. Horse Prot. Ass'n, Inc. v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001).............................................................................15

*Am. Soybean Ass'n v. EPA*,
   No. 1:20-cv-03190 (D.D.C. Nov. 13, 2020) ........................................................19

*Chester Water Auth. v. Susquehanna River Basin Comm'n*,
   No. 1:14-CV-1076, 2014 WL 3908186 (M.D. Pa. Aug. 11, 2014) ............... *passim*

*Conforti v. Hanlon*,
   No. CV 20-8267 (ZNQ), 2023 WL 2744020 (D.N.J. Mar. 31, 2023) ....................18

*Delaware Riverkeeper Network v. U.S. Army Corps of Eng'rs*,
   Civ. A. No. 09-5889 (JAP), 2010 WL 11566064 (D.N.J. Jan. 21, 2010)................9

*Donaldson v. United States*,
   400 U.S. 517 (1971)..............................................................................................10

*United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*,
   239 F.R.D. 404 (W.D. Pa. 2006) ..........................................................................18

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ..............................................................................16

*Hardin v. Jackson*,
   600 F. Supp. 2d 13 (D.D.C. 2009) ...................................................................11, 16

*Kinsella v. BOEM*,
   No. 1:22-cv-02147-JMC (D.D.C. Nov. 7, 2022) ............................................ *passim*

*Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*,
   6 F. Supp. 2d 360 (D.N.J. 1998) ...........................................................................10

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995)............................................................................10, 13

*N.L.R.B. v. Frazier*,
  144 F.R.D. 650 (D.N.J. 1992)...................................................................................9

*Nat. Res. Def. Council v. EPA*,
  99 F.R.D. 607 (D.D.C. 1983)..................................................................................14

*Pennsylvania v. President United States of Am.*,
  888 F.3d 52 (3d Cir. 2018)..........................................................................9, 10, 15

*Pereira v. Foot Locker, Inc.*,
  No. 07-CV-2157, 2009 WL 4673865 (E.D. Pa. Dec. 7, 2009).................................18

*Phila. Recycling & Transfer Station, Inc. v. City of Philadelphia*,
  No. 95-4597, 1995 WL 517644 (E.D. Pa. Aug. 29, 1995) ....................................18

*PPL Energyplus, LLC v. Solomon*,
  Civ. A. No. 11-745 (PGS), 2011 WL 13128622 (D.N.J. July 19, 2011).........9, 16, 18, 19

*Sierra Club v. E.P.A.*,
  995 F.2d 1478 (9th Cir. 1993), *abrogated by Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d
  1173 (9th Cir. 2011)..............................................................................................11

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972).................................................................................................15

## STATUTES

5 U.S.C.
  § 551 *et seq.* ............................................................................................................1
  § 704.........................................................................................................................8

16 U.S.C.
  § 1361 *et seq.* ...........................................................................................................1
  § 1362(13)................................................................................................................5
  § 1362(18)................................................................................................................5
  § 1371(a)(5)(A).........................................................................................................5
  § 1371(a)(5)(D).........................................................................................................5

42 U.S.C. § 4321 *et seq.*............................................................................................1

2022 Mass. Acts Chapter 179, § 61b,
  https://malegislature.gov/Laws/SessionLaws/Acts/2022/Chapter179.......................5

N.J. Exec. Order No. 307, § 2 (2022),
  https://nj.gov/infobank/eo/056murphy/pdf/EO-307.pdf .........................................5

New York State Climate Leadership and Community Protection Act of 2019, §§ 1(12)(d) & 4,
   S.B. 6599, 2019-2020 Reg. Sess. (N.Y. 2019),
   https://legislation.nysenate.gov/pdf/bills/2019/S6599 ............................................................5

S. 2036, 214th Leg. 2010-2011 Sess. (N.J. 2010),
   https://pub.njleg.state.nj.us/Bills/2010/S2500/2036_R2.PDF; ..................................................5

## RULES

Fed. R. Civ. P. 12 ...........................................................................................................................19

Fed. R. Civ. P. 24(a)(2) ........................................................................................................ *passim*

Fed. R. Civ. P. 24(b)(3) ................................................................................................................17

Fed. R. Civ. P. 24(c) ...........................................................................................................4, 18, 19

L.R. 7.1(f)(1) ....................................................................................................................................4

## REGULATIONS

50 C.F.R.
   § 216.3.........................................................................................................................................5
   § 216.104.....................................................................................................................................5
   § 216.105.....................................................................................................................................5
   § 216.106.....................................................................................................................................5
   § 216.107(e) ................................................................................................................................5

## OTHER AUTHORITIES

FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs,
   The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-room/statements-
   releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-
   projects-to-create-jobs/ ...............................................................................................................4

https://oceanwindone.com/about-the-project ...................................................................................4

https://oceanwindtwo.com/ ..............................................................................................................4

https://revolution-wind.com/about-revolution-wind ........................................................................4

https://skipjackwind.com/about-skipjack-wind ...............................................................................4

https://southforkwind.com/about-south-fork-wind ..........................................................................4

https://sunrisewindny.com/about-sunrise-wind); .............................................................................4

https://www.fisheries.noaa.gov/national/marine-mammal-protection/incidental-harassment-
   authorization-renewals ................................................................................................................5

U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States 1, 9 (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-offshore-wind-energy-full-report.pdf ..................................................................................................................................5

## I.      INTRODUCTION

Orsted North America Inc. ("Ørsted") is an owner and developer of the South Fork Wind, Ocean Wind I, Ocean Wind II, Sunrise Wind, Revolution Wind, Skipjack Wind, and Lease 0500 projects (collectively, the "Projects"), among the first commercial-scale offshore wind projects that will deliver clean, reliable power to the eastern United States.  Save Long Beach Island and Robert Stern (together, "Plaintiffs") seek declaratory and injunctive relief against the U.S. Department of Commerce and the National Marine Fisheries Service ("NMFS") (together, the "Federal Defendants") under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

Specifically, with respect to the Ørsted Projects, Plaintiffs challenge five incidental harassment authorizations ("IHAs") issued to the Projects and two pending NMFS incidental take rulemakings ("ITRs") and Letters of Authorization ("LOAs") that have not yet been issued (collectively, "incidental take authorizations" or "ITAs").  *See* "Complaint For Declaratory and Injunctive Relief Under the Marine Mammal Protection Act, National Environmental Policy Act and Administrative Procedures Act" (ECF No. 1) (the "Complaint") ¶¶ 29, 31-33, 39, Ex. A at 7-9; *see infra* Section II.A (Table 1).  Plaintiffs allege that the Projects' approvals violate federal law and ask this Court to: (i) set aside the active ITAs; (ii) enjoin NMFS from issuing pending ITAs; (iii) direct NMFS to "halt consideration" of ITAs relating to offshore wind projects in federal waters off of New Jersey and New York; (iv) direct NMFS to create an "advisory board" to investigate whale deaths and, pending the board's findings, submit a "revised vessel survey program" to the Court; and (v) direct NMFS to prepare an environmental impact statement "assessing the cumulative impacts of the ITAs" under NEPA, among other relief.  *See* Compl. at

60-61.

Ørsted has direct, substantial, and legally protectable interests in the challenged Project ITAs, and seeks to intervene in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) to defend its interests.  Alternatively, Ørsted seeks permissive intervention under Rule 24(b)(1)(B).  Plaintiffs do not oppose Ørsted's motion to intervene.  Federal Defendants take no position on Ørsted's motion to intervene.

Ørsted readily meets the test for intervention as of right under the Federal Rules of Civil Procedure.  First, Ørsted's intervention is timely and would not prejudice any of the existing parties, given that Ørsted has moved to intervene less than three weeks after Plaintiffs filed their Complaint challenging the federal approvals, and eight days after the federal government was served.  Ørsted is prepared to follow any schedule ordered by this Court.

Second, Ørsted has multiple direct, substantial, and legally protectable interests in the challenged ITAs, which are the subject of this action.  Ørsted has conducted extensive environmental and engineering work and sought, consulted on, and received dozens of permits and approvals from federal, state, and local authorities to develop the Projects—including the ITAs directly at issue in this case.  *See infra* Section II.A.  As an owner of each of the Projects holding the ITAs, Ørsted has specific interests in retaining these federal approvals and relying on their terms and conditions, in order to complete the Projects that it has spent over a decade developing. The ITAs are critically necessary approvals for the Projects, authorize key site characterization surveys and construction activities, and contain numerous conditions, mitigation measures, and monitoring and reporting requirements protective of marine mammals.

Third, Plaintiffs' requested relief threatens to directly impair Ørsted's interests, as the possibility that the Court could alter, delay, or set aside the federal approvals would likely result

in significant delays in the Projects' construction and operation, millions of dollars in costs and potentially termination of existing power purchase agreements ("PPAs") and other revenue awards, and a total loss of investment.  If Plaintiffs succeed in vacating or delaying the ITAs, Ørsted and its partners could suffer significant financial losses.  *See infra* Section III.A.3.

Fourth, Ørsted's participation in this case is necessary because its specific interests are distinct from those of the Federal Defendants and are not adequately represented in this litigation. Ørsted and its partners have invested the equivalent of decades of effort collectively and billions of dollars to date in the Projects, including in contractual obligations relating to their construction. In contrast to Federal Defendants, Ørsted is the <u>only</u> party that can speak with authority to the significant disruption that Plaintiffs' requested relief would cause to the Projects' construction schedules and the substantial harm to Ørsted's contractual and other interests in the Projects that are contingent on the ITAs.  No other party is capable of adequately representing Ørsted's significant interests in the subject of this action, and Ørsted is in a unique position to aid the Court's understanding of the issues in this case.

In the alternative, Ørsted should be granted permissive intervention.  Ørsted's defense of the ITAs will turn on common facts and legal principles with the main action.  As noted above, no existing party will be prejudiced by Ørsted's intervention, and Ørsted is uniquely positioned to provide relevant information on the ITAs to the Court and to address Plaintiffs' arguments.

Ørsted has been granted intervention in every other federal district court case challenging approvals for the Projects.  *See* Order, *Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-FB-ST, (E.D.N.Y. Mar. 14, 2022), ECF No. 16 (granting motion to intervene); *Allco Renewable Energy Ltd. v. Haaland*, No. 1:22-cv-10921-IT, (D. Mass. June 13, 2022), ECF No. 121 (same);

*Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, (D.D.C. Nov. 7, 2022), ECF No. 43 (same).[1]  This Court should likewise grant Ørsted's Motion to Intervene in this action.

      If the Court grants Ørsted's Motion to Intervene, Ørsted respectfully requests that the Court permit it to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7.1(f)(1) by the same deadline as Federal Defendants in this case, currently due on June 12, 2023, or three days after intervention is granted, whichever is later.  *See Kinsella*, No. 1:22-cv-02147-JMC, ECF No. 43; *see infra* Section III.C.

## II.    BACKGROUND

      Collectively, the Projects involve the planning, construction, and operation of seven commercial-scale wind energy facilities with a total capacity of nearly five gigawatts ("GW"). Declaration of Elizabeth Gowell ("Gowell Decl.") ¶ 1.  The Projects' wind turbine generators and associated facilities will be installed on the Outer Continental Shelf ("OCS") in federal waters in the Atlantic Ocean offshore the Mid-Atlantic and Northeastern seaboard.  *Id.*

      Each of the Projects is a key component of both the federal government's and multiple states'[2] laws and policies to fight climate change.  The federal government has set a goal of 30 GW of offshore wind by 2030.[3]  This goal will help the federal government meet its target to

---

[1] In *Mahoney*, *Allco*, and *Kinsella*, each of which challenged the South Fork Wind Project, intervention was granted to Ørsted's subsidiary, South Fork Wind, LLC.

[2] The Projects will provide renewable energy to the electric grid in multiple states, including: New Jersey (Ocean Wind I, https://oceanwindone.com/about-the-project, and Ocean Wind II, https://oceanwindtwo.com/); New York (South Fork Wind, https://southforkwind.com/about-south-fork-wind, and Sunrise Wind, https://sunrisewindny.com/about-sunrise-wind); Connecticut and Rhode Island (Revolution Wind, https://revolution-wind.com/about-revolution-wind); Massachusetts (Lease 0500); and Delaware, Maryland, and Virginia (Skipjack Wind, https://skipjackwind.com/about-skipjack-wind).

[3] *See* FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs, The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-

achieve 100% clean electricity by 2035.[4]  Similarly, New Jersey's climate goals further require, as a means to achieving its own target of 100% zero-emission electricity by 2035, the development of 11 GW of offshore wind by 2040.[5]  Taken together, the Projects represent a major step forward in achieving these goals.

A.   **Ørsted's Involvement in Multi-Year Federal and State Consultation and Approval Processes**

Plaintiffs challenge several ITAs[6] in this action, which collectively implicate all of the

---

to-create-jobs/.

[4] *See* U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States 1, 9 (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-offshore-wind-energy-full-report.pdf ("offshore wind can be a key contributor in many U.S. energy markets to achieving a zero-carbon electricity grid by 2035 and a net-zero emissions economy by 2050.").

[5] New Jersey Offshore Wind Economic Development Act of 2010, S. 2036, 214th Leg. 2010-2011 Sess. (N.J. 2010), https://pub.njleg.state.nj.us/Bills/2010/S2500/2036_R2.PDF; N.J. Exec. Order No. 307, § 2 (2022), https://nj.gov/infobank/eo/056murphy/pdf/EO-307.pdf.  By way of further example, New York State's climate goals further require, as a means to achieving its own target of 100% zero-emission electricity by 2040, the development of nine GW of offshore wind by 2035.  New York State Climate Leadership and Community Protection Act of 2019, §§ 1(12)(d) & 4, S.B. 6599, 2019-2020 Reg. Sess. (N.Y. 2019), https://legislation.nysenate.gov/pdf/bills/2019/S6599.  In 2022, Massachusetts enacted legislation bringing the state's total offshore wind development target to 5.6 GW by 2027.  2022 Mass. Acts Ch. 179, § 61b, https://malegislature.gov/Laws/SessionLaws/Acts/2022/Chapter179.

[6] As noted above, ITAs is an umbrella term that may refer to an IHA or an LOA for the "take" of marine mammals under the MMPA.  *See* 16 U.S.C. § 1362(13) ("the term 'take' means to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal").  NMFS issues IHAs, which are effective for up to 1 year, for actions resulting in take by harassment only to marine mammals.  16 U.S.C. §§ 1362(18), 1371(a)(5)(D); 50 C.F.R. §§ 216.3, 216.104.  IHAs may be renewed under certain circumstances not to exceed one year for each reauthorization.  50 C.F.R. § 216.107(e).  NMFS directs permittees to submit IHA renewal requests at least 60 days prior to the requested renewal date.  *See* https://www.fisheries.noaa.gov/national/marine-mammal-protection/incidental-harassment-authorization-renewals.  NMFS issues notices of renewal requests and provides a 15-day public comment period.  *See id.*  NMFS issues LOAs, which are effective for up to 5 years, for actions that may result in harassment only over multiple years, or for actions that may result in serious injury or mortality to marine mammals.  16 U.S.C. § 1371(a)(5)(A); 50 C.F.R. §§ 216.3, 216.105.  To issue LOAs, NMFS must first issue specific regulations, known as ITRs.  16 U.S.C. § 1371(a)(5)(A); 50 C.F.R. § 216.106.  For purposes of this Motion, Ørsted generally refers to the existing and pending federal approvals that Plaintiffs challenge in the Complaint as ITAs and refers to specific IHAs or LOAs where appropriate.

Projects, as shown in the following table:

**Table 1: Challenged Approvals and Projects Implicated**

| Challenged Approval | Project Implicated |
|---|---|
| **Issued/Active IHAs** | |
| Incidental Harassment Authorization issued to South Fork Wind, LLC on December 21, 2021<br>Effective: November 15, 2022 through November 14, 2023 | South Fork Wind |
| Incidental Harassment Authorization issued to Orsted Wind Power North America, LLC on May 6, 2022<br>Effective: May 10, 2022 through May 9, 2023 | Skipjack Wind |
| Incidental Harassment Authorization issued to Ocean Wind, LLC on May 9, 2022<br>Effective: May 10, 2022 through May 9, 2023 | Ocean Wind I |
| Incidental Harassment Authorization issued to Ocean Wind II, LLC on May 9, 2022<br>Effective: May 10, 2022 through May 9, 2023 | Ocean Wind II |
| Incidental Harassment Authorization issued to Orsted Wind Power North America, LLC on October 6, 2022<br>Effective: October 6, 2022 through October 5, 2023 | Sunrise Wind<br>Revolution Wind<br>Lease 0500 |
| **Pending ITRs/LOAs** | |
| Incidental Take Regulations and associated Letter of Authorization requested by Sunrise Wind LLC on November 10, 2021 (pending) | Sunrise Wind |
| Incidental Take Regulations and associated Letter of Authorization requested by Ocean Wind LLC on October 1, 2021 (pending) | Ocean Wind I |

*See* Gowell Decl. ¶ 1.

Ørsted and its partners have invested significant resources in the extensive, multi-year planning and development processes for each of the Projects, and have engaged with multiple federal, state, and local agencies to obtain the requisite approvals for the Projects, including the challenged federal approvals for survey and construction activities on the OCS.  Gowell Decl. ¶ 13.  Ørsted has developed voluminous technical and scientific submissions to federal, state, and

municipal agencies and participated in public consultation and review processes for the Projects. *Id.* For example, for South Fork Wind, this included an over 8-year process before the Bureau of Ocean Energy Management ("BOEM") and other federal and state agencies to secure regulatory approvals. *Id.* ¶¶ 9-23. South Fork Wind and its partners conducted extensive surveys of the Project area to understand and characterize the environment around the Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys. *Id.* ¶ 15. BOEM then conducted an extensive environmental review, including developing an environmental impact statement under NEPA, and approved South Fork Wind's Construction and Operation Plan on January 18, 2022. *Id.* ¶¶ 17-18. Construction has been ongoing for over a year. *Id.* ¶ 24.

In March 2019, South Fork Wind submitted an application to NMFS for an IHA to take marine mammals incidental to construction of the Project. *Id.* ¶ 20. After several amendments, NMFS deemed the application adequate and complete on December 16, 2020, and published notice of the proposed IHA in the Federal Register on February 5, 2021. *Id.* As part of its application, South Fork Wind submitted both a 154-page Animal Exposure Modeling report prepared by JASCO Applied Sciences and a 129-page JASCO report on Underwater Acoustic Modeling of Construction Noise. *Id.* ¶ 21. NMFS accepted public comments on the proposed IHA through March 10, 2021. *Id.* ¶ 22. Neither Plaintiff submitted comments on the proposed IHA. *Id.* NMFS issued the IHA to South Fork Wind on December 21, 2021. *Id.* ¶ 23.

The IHA is valid through November 14, 2023 and governs impact and vibratory pile-driving activities, high-resolution geophysical ("HRG") surveys, and in-water construction activities and vessel operations. *Id.* The IHA contains over 27 pages of conditions, mitigation measures, and monitoring and reporting requirements, including specific mitigation measures for

(1) impact pile driving of foundation monopiles, (2) pile driving at the horizontal directional drilling site, (3) construction surveys using specified HRG acoustic sources, and (4) vessel strike avoidance. *Id.* The IHA also mandates specific forms of monitoring, including sound field verification, passive acoustic monitoring, and Level A Harassment and Level B Harassment Zone verification for impact pile driving of wind turbine generator foundations. *Id.* The South Fork Construction IHA is needed to construct the wind turbines for the Project. *See id.* ¶¶ 23-24.

With respect to the active IHAs that NMFS has already issued to the Projects, Ørsted has undertaken similar processes for each of the other Projects. *See* Gowell Decl. ¶¶ 31-39 (process to obtain IHAs for Ocean Wind I), ¶¶ 40-43 (IHAs for Ocean Wind II), ¶¶ 44-51 (IHAs for Sunrise Wind), ¶¶ 57-61 (IHAs for Skipjack Wind), ¶¶ 52-56 (IHA for Revolution Wind), ¶¶ 62-63 (IHA for Lease 0500).

Plaintiffs have also challenged two pending ITRs that the Federal Defendants have not yet finalized. Compl. ¶¶ 28, 40, Ex. A at 9; *see supra* (Table 1). These two pending ITRs and associated LOAs will be necessary for the construction of Ocean Wind I and Sunrise Wind once issued with respect to each Project. Gowell Decl. ¶ 8. These pending ITRs are not final agency action and thus are not subject to judicial review under the Administrative Procedure Act. *See* 5 U.S.C. § 704.

## III.    ARGUMENT

### A.    Ørsted Is Entitled to Intervention as of Right

Ørsted is entitled to intervention as of right in this action under Federal Rule of Civil Procedure 24(a)(2).[7] To intervene as of right, a movant must demonstrate that: (1) the motion to

---

[7] "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,

intervene is timely; (2) it has a sufficient interest in the litigation; (3) the interest may be affected or impaired as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.  *See Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 (3d Cir. 2018).  Courts "'liberally construe[]'" Rule 24(a) 'in favor of intervention.'"  *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015) (quoting *N.L.R.B. v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992)).

Ørsted satisfies all requirements for intervention as of right, as set forth *infra* Section III.A.1-4.  Courts in this district regularly grant intervention as of right in litigation challenging government agency approvals and other property interests of the intervenor.  *See, e.g., Chester Water Auth. v. Susquehanna River Basin Comm'n*, No. 1:14-CV-1076, 2014 WL 3908186, at *5 (M.D. Pa. Aug. 11, 2014) (granting intervention to electric cooperative in case challenging approvals issued to it by water authority); *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 112 (M.D. Pa. 2011) (granting intervention to wastewater utility associations in case challenging discharge limitation underpinning U.S. Environmental Protection Agency ("EPA") authorizations issued to associations' members); *PPL Energyplus, LLC v. Solomon*, Civ. A. No. 11-745 (PGS), 2011 WL 13128622, at *2 (D.N.J. July 19, 2011) (granting intervention where movant is "active developer" and outcome of litigation would jeopardize movant's business); *Delaware Riverkeeper Network v. U.S. Army Corps of Eng'rs*, Civ. A. No. 09-5889 (JAP), 2010 WL 11566064, at *1 (D.N.J. Jan. 21, 2010) (granting intervention where movant has contractual rights with regard to challenged project).

### 1.    Ørsted's Motion Is Timely

To determine whether intervention is timely, the Third Circuit considers three factors: "(1)

---

unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). Ørsted has filed this Motion 17 days after Plaintiffs filed their Complaint, only eight days after Federal Defendants were served, and before any responsive pleadings have been filed. Intervention will not cause delay, and no party will be in any way prejudiced by Ørsted's intervention at this earliest possible stage in the proceedings. Therefore, Ørsted's Motion is timely. *See id.* at 370 (application timely when filed 37 days after intervenors learned that their interests were in jeopardy); *see also Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 364 (D.N.J. 1998) (application timely when filed less than two months after start of proceedings); *Chester Water Auth.*, 2014 WL 3908186, at *2 (application timely when filed within one week of filing of amended complaint); *Am. Farm Bureau Fed'n*, 278 F.R.D. at 104 (applications timely when filed less than three months after filing of amended complaint and where "lawsuit has not progressed to any proceeding of substance on the merits").

## 2. Ørsted Has Multiple Significantly Protectable and Substantial Interests in the ITAs that Are the Subject of This Action

To satisfy the second part of the Rule 24(a)(2) test, the movant must show that it has a "significantly protectable" interest in the subject of the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Third Circuit has interpreted this phrase to mean "a cognizable legal interest" that is "specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania*, 888 F.3d at 58 (citation omitted).[8]

---

[8] Intervenors are not required to demonstrate standing when intervening on the side of defendants. *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) ("Because the [intervenors] moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing."). Nonetheless, Ørsted has Article III standing

Ørsted has multiple substantial interests in the challenged federal approvals, which are the subject of this action.  A potential intervenor who shows that a case may implicate its interest in a government agency permit, approval, or authorization demonstrates that it has a "significantly protectable" interest.  *See, e.g.*, *Chester Water Auth.*, 2014 WL 3908186, at *2-3 (electric cooperative had "legally protectable interest" in approval it received from water resources agency, where approval was the subject matter of the litigation, intervenor "clearly has an important interest in retaining and enforcing the benefits of the Approval as a whole", and the electric cooperative "relies on the terms of the . . . Approval in operating its electricity generation facilities"); *Am. Farm Bureau Fed'n*, 278 F.R.D. at 104-07 (wastewater utility associations with members subject to limits imposed by EPA total maximum daily load limitation demonstrated "protectable interest sufficiently related to the subject of th[e] action"); *Sierra Club v. E.P.A.*, 995 F.2d 1478, 1482-84 (9th Cir. 1993) (owner of EPA water quality permit had "legally protected interest" in suit challenging its validity that fell "squarely in the class of interests traditionally protected by law"), *abrogated by Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 14 (D.D.C. 2009) (holder of EPA pesticide approval entitled to intervene under Rule 24(a)(2) to protect interests where it "applied for [the] registrations, submitted the data in support of them, and worked with [EPA] to secure and maintain the registrations.").

Here, Ørsted has multiple significantly protectable interests in each of the ITAs for its Projects that Plaintiffs now ask the Court to set aside.  ITAs are required for offshore wind development to address the marine site characterization surveys and construction activities that

---

because it would suffer concrete and particularized injury to its interests in the federal approvals and its investments in obtaining them and made in reliance on them, *see infra* Section III.A.3, were the Court to rule in Plaintiffs' favor.

could potentially result in incidental "harassment" of marine mammals in project site areas during such activities.  Gowell Decl. ¶ 7.  Each of the IHAs for the South Fork Wind, Ocean Wind I, Ocean Wind II, Sunrise Wind, Revolution Wind, Skipjack Wind, and Lease 0500 Projects required developing substantial scientific and technical information by Ørsted at great cost and investment of other resources.  *Id.* ¶¶ 20-24 (discussing efforts to obtain South Fork Wind ITA as example of type of extensive application and approval process involved); *see supra* Section II.A (Table 1 showing challenged ITAs and Projects implicated).

ITAs can authorize pile-driving activities, high-resolution surveys, and in-water construction activities and vessel operations.  Gowell Decl. ¶ 23.  The South Fork Wind IHA, as an example, does so and contains 27 pages of numerous conditions, mitigation measures, and monitoring and reporting requirements protective of marine mammals.  *Id.*  For each IHA NMFS has issued to the Projects, NMFS has found that only small or negligible numbers of marine mammals would be affected by the authorized activities.  *Id.* ¶ 6.  For example, for South Fork Wind, NMFS found, based on "the planned activity (including the required mitigation and monitoring measures) . . . small numbers of marine mammals will be taken relative to the population size of all affected species or stocks." *Id.* ¶ 23.  The South Fork Wind Project has been in development for over nine years, and construction is already underway.  *Id.* ¶¶ 9, 24.  Offshore seabed preparation and cable installation are ongoing and largely complete.  *Id.*  And installation of turbine foundations will begin in June, with piling activities and mitigation measures protective of marine mammals to be conducted as authorized in the IHA.  *Id.* ¶¶ 9, 24.  The IHA is needed to construct the Project.  *See id.* ¶ 23-24.  Similarly, for the pending ITRs and LOAs Ørsted has sought in connection with the Ocean Wind I and Sunrise Wind Projects, in each case, these ITAs are critical for many aspects of oceanographic surveys and future construction, and the Projects

cannot be constructed without them.  *Id.* ¶¶ 36-38, 48-50.  Overall, Ørsted and its partners have

invested many years and extensive resources in obtaining and otherwise seeking the ITAs, which

are critically necessary to complete each Project's construction and operation.  *See id.* ¶ 13.

Other federal district courts have granted Ørsted intervention of right, given Ørsted's

significantly protectable interest in litigation challenging Project approvals.  *See* Memorandum of

Law in Support of Motion to Intervene, *Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-

FB-ST, (E.D.N.Y. Mar. 11, 2022), ECF No. 15-1 (*see* Section III.A.2); *see id.* at ECF No. 16

(order granting intervention) (E.D.N.Y. Mar. 14, 2022); Order, *Kinsella v. BOEM*, No. 1:22-cv-

02147-JMC, (D.D.C. Nov. 7, 2022), ECF No. 43 (granting motion to intervene).  Accordingly,

Ørsted satisfies the interest requirement of Rule 24(a)(2).

### 3.  Without Intervention, Disposition of the Action Would Impair and Impede Ørsted's Ability to Protect Its Interests

To satisfy the third part of the Rule 24(a)(2) test, the movant need only show that an

unfavorable disposition of the action "may as a practical matter impair or impede" its ability to

protect its interest. Fed. R. Civ. P. 24(a)(2).  The movant "must demonstrate that there is a tangible

threat to a legally cognizable interest to have the right to intervene[,]" but in doing so need only

show that its interest "*might* become affected or impaired, as a practical matter, by the disposition

of the action in [its] absence."  *Mountain Top Condo. Ass'n*, 72 F.3d at 366, 368 (citation omitted).

Where, as here, a movant shows that disposition of a case could affect its interest in a

government permit, approval, or authorization regulating its activities, the movant clearly

demonstrates that a decision in its absence could impair its ability to protect that interest.  *See, e.g.*,

*Chester Water Auth.*, 2014 WL 3908186, at *3-4 (court determined that "it is entirely possible that

all or parts of the Approval will be altered as a result of the litigation or that [the intervenor] will

face a delay in operations . . . [t]herefore, the court finds that [intervenor] has satisfied its burden

of showing that its interest may be impaired or affected by the court's disposition of this action."); *Am. Farm Bureau Fed'n*, 278 F.R.D. at 107-08 (intervenor wastewater utility associations "satisfied their burden of showing that their interests may be impaired or affected by the practical consequences" if court were to grant plaintiffs' request to vacate EPA pollutant total maximum daily load limitation, potentially shifting compliance burden to intervenors); *Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (concluding intervenors' interests would be "practically impaired" given mere "possibility" of court setting aside preliminary EPA decisions relating to intervenors' products).

Here, Plaintiffs ask this Court, among other things, to enter an order setting aside each of the ITAs on which Ørsted's Projects depend. Compl. at 60; *see supra* Section II.A (Table 1). Thus, Plaintiffs' action directly threatens the validity of the Projects' approvals, *see supra* Section II.A, and Plaintiffs seek relief that, if granted, would impair Ørsted's ability to proceed as planned with construction and operation of the Projects. If the Court were to set aside the IHAs or prevent the issuance of the ITRs and LOAs that the Projects depend on, Ørsted and its partners could suffer significant financial losses. Gowell Decl. ¶ 65. Without the challenged authorizations, the Projects would face serious delay, jeopardizing existing investments of the equivalent of decades of effort collectively and billions of dollars in costs relating to planning, engineering, field work, technical analysis, permitting, and contracting by Ørsted and its partners. *Id.* Indeed, if the South Fork Wind IHA alone is delayed or set aside, Ørsted and its partners could lose in excess of $1 billion. *Id.* ¶ 64. If the Project is delayed in achieving Commercial Operation under the Long Island Power Authority ("LIPA") PPA, it may be required to pay LIPA liquidated damages of $26,400 per day for each day of the shortfall up to a maximum of 365 days of delay, which could amount to as much as $9.6 million in penalties. *Id.* ¶ 28. If the Project fails to achieve Commercial Operation

within 365 days of the PPA target date, LIPA could terminate the PPA, seek additional liquidated damages in the amount of the Project's security, and South Fork Wind could lose its entire investment, as well as all future profits.  *Id.* ¶ 30.

Ørsted's intervention in this action is thus necessary to protect its significant interests in the challenged approvals authorizing the Projects.  Ørsted has been granted intervention as of right on this ground in other federal district court cases challenging Project approvals.  *See Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-FB-ST, (E.D.N.Y. Mar. 14, 2022), ECF No. 16; *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, (D.D.C. Nov. 7, 2022), ECF No. 43.  The Court should likewise grant Ørsted's Motion to Intervene as of right in this case.

### 4.      Existing Parties Will Not Adequately Represent Ørsted's Interests

To satisfy the fourth part of the Rule 24(a)(2) test, the movant must establish that its interests are not adequately represented by existing parties.  This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *accord Pennsylvania*, 888 F.3d at 60.  The burden on the movant is "comparatively light" where the government, as an existing party, must defend "numerous complex and conflicting interests" and where, as here, "there is no guarantee that the government will sufficiently attend to the [movant's] specific interests[.]" *Id.* at 61 (citations omitted).  The government's "general interest" in seeing its decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).

In circumstances where a developer has invested substantial effort in obtaining numerous government approvals for multiple projects and a court setting aside the approvals could result in the delay or failure of any one or all of the projects, courts have recognized that the government

does not adequately represent the specific, narrower economic and other interests of the developer. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-37 & n.9 (D.C. Cir. 2003) (collecting cases recognizing that "governmental entities do not adequately represent the interests of aspiring intervenors"); *Chester Water Auth.*, 2014 WL 3908186, at *4-5 (granting intervention as of right to developer with unique business interests distinct from government's interests); *PPL Energyplus, LLC*, 2011 WL 13128622, at *3 (same); *Am. Farm Bureau Fed'n*, 278 F.R.D. at 109-11 (wastewater utility associations' "specific economic interests" may conflict with EPA's "broader interest of protecting the public welfare"); *Hardin*, 600 F. Supp. 2d at 16 (pesticide registrant's "economic and proprietary interests" not shared by EPA regulators).

Here, Federal Defendants do not share Ørsted's specific interests in meeting its contractual obligations and protecting its extensive financial investments in the Projects. *See supra* Section III.A.3. Although Federal Defendants and Ørsted nominally share the objective of defending the ITAs authorizing the Projects' construction and operation, the broad public interest that Federal Defendants are charged with defending is distinct from Ørsted's more specific interests. *See id.* Federal Defendants may not be able or motivated to raise the same defenses as Ørsted, and Plaintiffs are seeking to impair those interests. Thus, the existing parties are inadequate representatives of Ørsted's interests in this case. Even if other developers seek to intervene in this action, such developers would have no insight into or interest in Ørsted's distinct approval processes and separate factual administrative records for the Projects, and therefore also would not be able to adequately represent Ørsted's interests.

Here, too, Ørsted has been granted intervention on this ground as of right in other federal district court cases challenging Project approvals. *See Mahoney v. U.S. Dep't. of the Interior*, No. 2:22-cv-01305-FB-ST, (E.D.N.Y. Mar. 14, 2022), ECF No. 16; *Kinsella v. BOEM*, No. 1:22-cv-

02147-JMC, (D.D.C. Nov. 7, 2022), ECF No. 43.  The Court should likewise grant Ørsted's Motion to Intervene as of right in this case.

Given the foregoing, Ørsted is entitled to intervene as of right in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2).

### B.      In the Alternative, the Court Should Grant Permissive Intervention

In the alternative, the Court should grant Ørsted permissive intervention because it has met the requirements of Rule 24(b), which permits intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Ørsted meets the standard for permissive intervention under Rule 24(b).  First, Ørsted's defense of the challenged approvals will be determined on common facts and legal principles with the main action.  Because Ørsted will raise defenses directly responsive to Plaintiffs' claims, it necessarily will assert a claim or defense in common with the main action and satisfies the common question of law or fact requirement.  Second, as explained above, *see supra* Section III.A.1, no existing party will be prejudiced by Ørsted's intervention.  Ørsted has moved to intervene less than three weeks after Plaintiffs filed their Complaint challenging the federal approvals, and only eight days after Federal Defendants were served.  Intervention at this earliest stage of litigation will not delay the proceeding, and Ørsted is prepared to meet any schedule set by this Court.

Permissive intervention is also appropriate because Ørsted's participation in this case will significantly contribute to full development of the underlying factual issues in the suit.  As the developer of the Projects, Ørsted was a key participant in all of the governmental approval processes implicated by Plaintiffs' allegations of harm in this case, and is uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiffs'

arguments.  *See supra* Section II.A.   As a result, Ørsted's participation in this action as an intervenor will promote a fair and full adjudication of Plaintiffs' claims.

### C.    Ørsted Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants

Ørsted respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) by the same deadline as Federal Defendants, currently due on June 12, 2023, or three days after intervention is granted, whichever is later.  Although a motion to intervene should generally "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), courts typically permit a movant to intervene without filing a pleading at that time, as long as the motion sufficiently informs the court of the grounds for intervention.  *See, e.g.*, *Conforti v. Hanlon*, No. CV 20-8267 (ZNQ), 2023 WL 2744020, at *3 (D.N.J. Mar. 31, 2023) ("Our courts, however, have not required strict compliance with Rule 24(c).  Motions to intervene have been granted by courts within the Third Circuit despite a movant's failure to adhere precisely to the requirements of Rule 24(c), where the purpose of intervening was sufficiently clear.") (citing *United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 410-12 (W.D. Pa. 2006)); *PPL Energyplus, LLC*, 2011 WL 13128622, at *3 ("[l]iberal construction" of Rule 24(c) pleading requirement "especially appropriate" where intervenor satisfies "policy behind Rule 24(c) of providing notice to the existing parties of the basis and nature of the intervener's claim") (quoting *Pereira v. Foot Locker, Inc.*, No. 07-CV-2157, 2009 WL 4673865, at *5 (E.D. Pa. Dec. 7, 2009)); *Phila. Recycling & Transfer Station, Inc. v. City of Philadelphia*, No. 95-4597, 1995 WL 517644, at *3 (E.D. Pa. Aug. 29, 1995) (same).

Ørsted's Motion clearly informs the Court and the parties of the nature and basis for its need to participate in this case, such that the Court may adequately evaluate the issues and grant

Ørsted intervention without a corresponding pleading.  *See PPL Energyplus, LLC*, 2011 WL 13128622, at *3.  Deferring Ørsted's recitation of defenses in an Answer to align with Federal Defendants' deadlines will further judicial economy by not prematurely requiring Ørsted to file responsive pleadings (possibly including any dispositive motions under Federal Rule of Civil Procedure 12) until Federal Defendants are also required to file.  *See, e.g.*, Order, *Kinsella v. BOEM*, No, 1:22-cv-02147 (D.D.C. Nov. 7, 2022), ECF No. 43 (granting South Fork Wind intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); Order, *Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190 (D.D.C. Nov. 13, 2020), ECF No. 20 (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as federal defendant).  Granting this request will not cause any delay in this litigation, as Federal Defendants have not yet filed their own responsive pleading.

## IV.    CONCLUSION

For the foregoing reasons, Ørsted respectfully requests that this Court grant its Motion to Intervene as a matter of right pursuant to Rule 24(a)(2) or, in the alternative, that the Court grant permissive intervention pursuant to Rule 24(b)(1)(B), and that Ørsted be permitted to file its responsive pleading under Rule 24(c) on the same date as Federal Defendants' deadline for responding to Plaintiffs' Complaint or three days after intervention is granted, whichever is later.

Dated: April 21, 2023
      New York, New York

Respectfully submitted,

*/s/* Kegan A. Brown
Kegan A. Brown (NJ Bar No. 015482007)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel.: (212) 906-1200
Email: kegan.brown@lw.com

Janice M. Schneider (*pro hac vice* pending)
Stacey L. VanBelleghem (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Tel.: (202) 637-2200
Email: janice.schneider@lw.com
Email: stacey.vanbelleghem@lw.com

*Counsel for Proposed Intervenor-Defendant*
*Orsted North America Inc.*